**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SPEED INFORMATION TECHNOLOGY, INC., et al., | |
| Plaintiff, | Civil Action No. 12-3040 (JLL) (JAD) |
| v. | OPINION |
| SAPIDO TECHNOLOGY, INC., et al., | |
| Defendants. | |

JOSEPH A. DICKSON, U.S.M.J.

This matter comes before the Court upon Speed Information Technology Inc., Ekran Ozcan, and Farah Avci's (collectively "Plaintiffs") Motion for Leave to File an Amended Complaint. (ECF No. 61). Pursuant to Federal Rule of Civil Procedure 78, no oral argument was heard. Upon careful consideration of the parties' submissions, and for the reasons stated below, Plaintiffs' Motion to Amend is **GRANTED** in part and **DENIED** in part.

### I.      BACKGROUND

Plaintiff Speed Information Technology, Inc. ("Speed") is a New Jersey corporation with its principal place of business in Edgewater, New Jersey. (Id. ¶ 1). Plaintiffs Ekran Ozcan and Farah Avci, officers of Speed, also reside in New Jersey. (Id.). Defendant Sapido Technology, Inc. (incorporated in Taiwan) ("Sapido Taiwan") "manufactures products used for wireless communications [and] accessing the Internet and computer networks, including modems, routers and other electronic devices." (Id. ¶ 3). Defendant Sapido Technology, Inc. (incorporated in the

state of Virginia) a/k/a Sapido Technology Inc. US ("Sapido US"),[1] a subsidiary of Sapido Taiwan, is incorporated in the state of Virginia and maintains its offices in Virginia Beach, Virginia. (Id. ¶¶ 4-5).

On May 21, 2012, Plaintiffs brought this action against Defendants Sapido Taiwan, Sapido US, and other fictitious defendants (hereinafter "Defendants") in this Court, alleging: that Defendants made fraudulent and/or negligent misrepresentations (First Count); that certain of Defendants' actions are barred under the doctrine of promissory estoppel (Second Count); that Defendants violated the New Jersey Franchise Practices Act (Third Count); that Defendants unjustly enriched themselves at Plaintiffs' expense by misappropriating Speed's intellectual property (Fourth Count); that Defendants tortiously interfered with Plaintiffs' business relationships (Fifth Count); that Defendants converted Speed's intellectual property (Sixth Count); that Defendants breached their fiduciary duty to Plaintiffs (Seventh Count); that Defendants breached the March 2010 Distribution Agreement (Eighth Count); that Defendants breached an implied contract following the expiration of the March 2010 Distribution Agreement (Ninth Count); that Defendants breached both the explicit terms and the implied covenant of good faith and fair dealing of the Proposed 2011 Agreement (Tenth and Eleventh Counts); that Defendants' actions also damaged individual Plaintiffs Okran and Avci (Twelfth Count); that Defendants negligently harmed Plaintiffs (Thirteenth Count); and that Plaintiffs were entitled to certain declaratory and equitable relief in connection with Defendants' actions (Fourteenth and Fifteenth

---

[1] Throughout the Complaint, Plaintiffs collectively refer to both Sapido Taiwan and Sapido US as "Sapido." (Compl., ECF No. 1, ¶ 5; Prop. Am. Compl., ECF No. 62, ¶ 5). While the Court notes that all pre-June 28, 2011 references to "Sapido" must necessarily refer only to Sapido Taiwan (as, per Plaintiffs' own allegations, Sapido US did not yet exist), post-June 28, 2011 references are unclear. The Court therefore attributes such allegations to both defendants. Furthermore, the Court shall only endeavor to differentiate between the two Defendants when the parties have made the distinction clear.

Counts).  Plaintiffs contend that, as a result of Defendants' conduct, Plaintiffs have suffered both monetary and reputational damages.  (Id. ¶ 74).

On February 14, 2014, Defendant Sapido Taiwan filed a motion seeking to dismiss Plaintiffs' Complaint for lack of personal jurisdiction, or in the alternative, forum non conveniens. (ECF No. 33).  On August 18, 2014, the Honorable Jose L. Linares, U.S.D.J., ordered, based on the Report and Recommendation of this Court, that the First, Second, Third, Fourth, Fifth, Seventh, Eight, Twelfth, and Thirteenth counts of the Complaint be dismissed without prejudice for lack of personal jurisdiction.  (ECF No. 47, at 2).

On October 17, 2014, this Court entered an Amended Pretrial Scheduling Order, which set the date to add new parties and amend the Complaint for February 13, 2015.  (ECF No. 50, ¶¶ 13, 14).  Plaintiffs filed the instant motion for leave to file an Amended Complaint on September 24, 2015, seeking to: (i) add an additional count against the existing Defendants for the sale, distribution, and/or supply of blank CD's and DVD's in the United States, and (ii) add a new count asserting new claims against CNET Technology ("CNET").  (Prop. Am. Compl., ECF No. 62, at 46-76).  Moreover, Plaintiffs' proposed Amended Complaint includes the claims Judge Linares dismissed for lack of personal jurisdiction.  (ECF No. 47, at 2; ECF No. 61-2; ECF No. 62).  The inclusion of those claims is discussed in further detail below.

Plaintiffs argue that its motion to amend should be granted pursuant to Federal Rule of Civil Procedure 15 because the information regarding Sapido's distribution of CD's and DVD's in violation of the Exclusive Distribution Agreement was not discovered until August of 2015. (Pls. Br., ECF No. 61-1, at 3).  While conducting research in response to Defendants' discovery requests, Plaintiffs discovered a website containing U.S. Customs information indicating that Sapido allegedly shipped over 30,000,000 CDs and DVDs to the United States in 2010 and 2011.

(Eichhorn Cert., ECF No. 61-4, ¶ 4–5).  Plaintiffs assert that they would have made 30% net profit

off of the sale of each CD and DVD had the Exclusive Distribution Agreement been honored. (Id.

¶¶ 6, 9).

Plaintiffs further argue that they should be given leave to amend as to CNET because

Plaintiffs "maintained in the past that Sapido provided the work product and intellectual property

of Speed to CNET Technology (incorporated in Taiwan)." (Pls. Br., ECF No. 61-1, at 4).  Plaintiffs

supposed that CNET "then used the information to sell products in the United States, including to

potential customers of Speed, including TigerDirect.  Plaintiffs position had been that CN[ET]

Taiwan and Sapido were subsidiaries of the same parent company E-Top Technology."  (Id.).

In response to a subpoena served on it, CNET allegedly "denied having any knowledge of

Sapido or its products, or sales of products to vendors of such products" and, as a result, Plaintiffs

believed that "CNET USA was likely a different company then CNET Taiwan and was likely not

connected to the misuse of Plaintiffs' work product and intellectual property."   (Id.).

Subsequently, in September of 2015, Plaintiffs discovered that "CNET USA was and is selling the

very same CNET routers (which Plaintiffs thought were being sold by CNET Taiwan) that are the

same as the Sapido routers that Speed was offering for sale in the United States." (Id. at 5).

> Within this month, on-line research revealed that CNET USA sold
> these routers to TigerDirect, just a month[] after plaintiffs provided
> TigerDirect information about identical routers and plaintiffs gave
> TigerDirect samples of these identical Sapido routers.  This was also
> after plaintiffs provided Sapido with information as to what routers
> TigerDirect was seeking to acquire.  As set forth in their recent
> depositions, it is Plaintiffs who provided Sapido (and unknowingly
> CNET) the information needed to make the Sapido and the CNET
> routers compatible in the United States market, and it is Plaintiffs
> who assisted Sapido (and unknowingly CN[ET]) to develop
> firmware which allows these routers in the United States.

(Id.).

4

On October 2, 2015, Defendants filed a letter in opposition to Plaintiffs' motion arguing that: (i) the Court should deny the additional CD's and DVD's claim for undue delay and unfair prejudice under Federal Rule of Civil Procedure 15; (ii) the Court should deny the new claims against CNET for further prejudice and; (iii) even if the Court is persuaded by Plaintiffs' motion, Plaintiffs' proposed Amended Complaint does not accurately reflect the District Court's previous order dismissing several counts of the complaint for lack of personal jurisdiction. (Defs. Opp. Br., ECF No. 64, at 2-5, 6). Plaintiffs replied, arguing that: (i) any delay and prejudice has been caused by the Defendants' own doing; and (ii) had the current information been known at the time the motion to dismiss was heard, the Court would have decided differently on the matter of personal jurisdiction. (Pls. Rep. Br., ECF No. 65).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) governs requests for leave to amend, allowing a party to amend its pleadings after obtaining the court's leave or the written consent of its adversary. The decision to grant or deny leave to amend is "committed to the sound discretion of the district court." Arab African Int'l Bank v. Epstein, 10 F.3d 168, 174 (3d Cir. 1993). While courts have broad discretion to decide motions to amend, they must "heed Rule 15(a)'s mandate that amendments are to be granted freely in the interests of justice." Voilas et al. v. General Motors Corp., et al., 173 F.R.D. 389, 396 (D.N.J. 1997) (internal citations and quotations omitted); see FED. R. CIV. P. 15(a)(2) ("The court should freely give leave when justice so requires."). This lenient standard ensures that "a particular claim will be decided on the merits rather than on technicalities." Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990) (internal citation omitted); see also Sabatino v. Union Township, No. , 2013 WL 1622306, at *6 (D.N.J. April 15, 2013) (internal citations omitted) (indicating that "if the underlying facts relied upon by a party

5

might be a proper subject of relief, that party should have the opportunity to test its claims on the merits.").

The decision to grant or deny leave to amend under Rule 15(a) is "committed to the sound discretion of the district court." Arab African Int'l Bank v. Epstein, 10 F.3d 168, 174 (3d Cir. 1993). While courts have broad discretion to decide motions to amend, they must "heed Rule 15(a)'s mandate that amendments are to be granted freely in the interests of justice." Voilas et al. v. General Motors Corp., et al., 173 F.R.D. 389, 396 (D.N.J. 1997) (internal citations and quotations omitted). In the absence of unfair prejudice, futility of amendment, undue delay, bad faith, or dilatory motive, the court must grant a request for leave to amend. Grayson v. Mayview State Hosp., 292 F. 3d 103, 108 (3d Cir. 2002); see also Arthur v. Maersk, Inc., 434 F. 3d 196, 204 (3d Cir. 2006) (stating that generally, leave to amend should be granted "unless equitable considerations render it otherwise unjust.").

Here, Defendants challenge Plaintiffs' proposed amendments based on undue delay and prejudice. (Defs. Opp. Br., ECF No. 64, at 2-5). Unfair prejudice is the most common factor used by courts to deny leave to amend. Unfair prejudice is usually found when there has been a significant unjustified delay in moving to amend that creates an unfair disadvantage for the defendant. Delay alone will not justify denying a motion to amend. See Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001) (holding that mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay). Only where delay becomes "'undue,' placing an unwarranted burden on the court, or ... 'prejudicial,' placing an unfair burden on the opposing party," will denial of a motion to amend is appropriate. Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984) ("The question of undue delay, as well as the question of bad faith, requires that [the Court] focus on the plaintiff['s] motives for not amending [its]

6

complaint to assert [the] claim[s] earlier; the issue of prejudice requires that [the Court] focus on the effect on the [defendant]."). Delay may become undue when there has been previous opportunity to amend the complaint. See Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993) (finding that a three-year lapse between the filing of the complaint and the proposed amendment was "unreasonable" delay when plaintiff had previous opportunities to amend). In such cases, the Court must focus on the moving party's reasons for not amending the pleading sooner. USX Corp. v. Barnhart, 395 F.3d 161, 168 (3d Cir. 2004).

Plaintiffs' application is not, however, governed by Federal Rule of Civil Procedure 15, but rather Rule 16 because the Pretrial Scheduling Order entered by this Court set the date to amend the Complaint to add new parties for February 13, 2015. (ECF No. 50). This Court never extended that date. Accordingly, as explained below, the good cause standard under Federal Rule of Civil Procedure 16 was triggered on February 13, 2015.

Federal Rule of Civil Procedure 16 authorizes a district court to enter pretrial scheduling orders, setting deadlines for the completion of discovery and amendment of pleadings. Rule 16's purpose is to empower the Court to:

> (1) expedit[e] disposition of the action;
> (2) establish[ ] early and continuing control so that the case will not be protracted because of lack of management;
> (3) discourag[e] wasteful pretrial activities;
> (4) improv[e] the quality of the trial through more thorough preparation; and
> (5) facilitat[e] settlement.

FED. R. CIV. P. 16(a). The pretrial scheduling order allows a court to take "judicial control over a case and to schedule dates for completion by the parties of the principal pretrial steps." Harrison Beverage Co. v. Dribeck Imps., Inc., 133 F.R.D. 463, 469 (D.N.J. 1990) (quoting FED. R. CIV. P.

16 advisory committee's note to 1983 amendment)); see also Newton v. A.C. & S., Inc., 918 F.2d 1121, 1126 (3d Cir.1990) (stating that purpose of Rule 16 is to provide for judicial control over cases, streamline proceedings, maximize efficiency of court system, and actively manage timetable of case preparation to expedite speedy and efficient disposition of cases).[2] The scheduling order must, among other things, "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." FED. R. CIV. P. 16(b)(3)(A). Requiring the court to include a deadline for amending pleadings in the pretrial scheduling order "assures that at some point . . . the pleadings will be fixed." FED. R. CIV. P. 16(b) advisory committee's note to 1983 amendment; see also Harrison, 133 F.R.D. at 469 ("The careful scheme of reasonable framing and enforcement of scheduling orders for case management would thus be nullified if a party could inject amended pleadings upon a showing of less than good cause after scheduling deadlines have expired.").

Rule 16(b) provides that "a schedule may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). A determination of "good cause" under Rule 16 depends on the diligence of the moving party. GlobespanVirata, Inc. v. Texas Instruments Inc., No. 03–2854, 2005 WL 1638136, at *3 (D.N.J. July 12, 2005). Specifically, to demonstrate "good cause" pursuant to Rule 16, the moving party must show that, despite its diligence, the deadlines set forth in the scheduling order could not reasonably be met. Id.; see also Harrison, 133 F.R.D. at 469. The absence of prejudice to the non-moving party does not constitute "good cause" under Rule 16. GlobespanVirata, 2005 WL 1638136, at *3. Only once the party has shown sufficient

---

[2] See also FED. R. CIV. P. 16(a) Advisory Committee's note (1983 Amendment) (stating that "scheduling and case management" are express goals of pretrial procedure and emphasized judicial management of motions and discovery); FED. R. CIV. P. 16(c) advisory committee's note (1993 amendment) (noting the need "to eliminate questions that have occasionally been raised regarding the authority of the court to make appropriate orders designed . . . to provide for an efficient and economical trial.")

"good cause" to amend the Rule 16 Order to extend the deadline will the Court evaluate the proposed amendment under Rule 15(a). That is, if the moving party is unable to demonstrate "good cause", the Court will deny the motion and will not proceed to a Rule 15 analysis.

The Court has "discretion in determining what kind of showing the moving party must make in order to satisfy Rule 16(b)'s good cause requirement." Phillips, 2006 WL 3069475, at *6. Under some circumstances, good cause may be found based on a "mistake, excusable neglect or any other factor which might understandably account for failure of counsel to undertake to comply with the [s]cheduling [o]rder." Id. The most common basis for finding a lack of good cause is the party's knowledge of the potential claim before the deadline to amend has passed. Dimensional Commc'ns, Inc. v. Oz. Optics, Ltd., 148 Fed. App'x. 82, 85 (3d Cir. 2005) (defendant "could not satisfy Rule 16(b)'s good cause requirement because [it] was in possession of the facts underlying the proposed counterclaim well before the amendment deadline."). See also Prime Ins. Syndicate v. United Risk Mgmt. Srvcs., No. 03-1050, 2006 WL 2085388, at *5 (D.N.J. July 25, 2006) ("Plaintiff provided no reason for why it could not have asserted these new claims against [the defendant] within the requisite deadlines. In fact, in Plaintiff's brief for this appeal it acknowledges that it 'had knowledge of [the allegations] since October 2004.'"); Harrison, 133 F.R.D. at 469 ("This is most definitely not a motion in which any of defendant's six proposed new affirmative defenses arose from recent discovery in the case.").

Plaintiffs did not seek leave to amend until September 24, 2015. (ECF No. 61). Therefore, Plaintiffs must demonstrate good cause as to both the new claims against CNET and the additional claims regarding the CD's and DVD's in order for this Court to analyze this motion under Federal Rule of Civil Procedure 15.

## III.   ANALYSIS

### a.   CD's and DVD's Claim

Defendants argue that Plaintiffs failed to indicate why the information supporting Plaintiffs' new claims was not readily available when the Complaint was filed considering Plaintiffs' "counsel indicates the information was found by Plaintiffs online, without any indication the information was not available in 2012." (Defs. Opp. Br., ECF No. 64, at 3). Defendants argue that Plaintiffs have had three years of discovery to come across such information. (Id. at 2). Plaintiffs argue in response that Defendants failed to provide any information regarding the CD's and DVD's in discovery, even though such information "would have been responsive to plaintiffs' discovery demands." (Pls. Rep. Br., ECF No. 65, at 6).[3] Specifically, Plaintiffs Notice to Produce requested the following from Defendant Sapido Taiwan:

> 7.   All documents setting forth any and all sales from March 17, 2010 to present of any and all Products to anyone and/or any entity located in the United States.

> 8.   All documents setting forth all monies received by Sapido Taiwan and/or Sapido VA as the result of any and all sales from March 17, 2010 to present and of any and all Products to anyone and/or any entity located in the United States.

> 9.   All bank and financial records (internal and external) of Sapido Taiwan from March 1, 2010 to the present that reflect monies received from the sales of Products that were sold in the United States and the revenue generated from the sales.

---

[3] Defendants' apparent failure to adequately respond to Plaintiffs' discovery demands (or supplement their existing responses) raises serious questions. Defendants submitted a declaration in support of its motion to dismiss for lack of personal jurisdiction asserting that "[o]ut of the total worldwide sales, the U.S. market accounted for a total of $53,423.70 in 2010, or 3.2% of worldwide sales; $223,049 in 2011, or 5.4% of worldwide sales; and $83,876.50 in 2012, or 1.9% of worldwide sales." (Sun Rep. Decl., ECF No. 41, ¶ 1). These figures appear to be irreconcilable with the sale of 30,000,000 CD's and DVD's. Defendants have not addressed those alleged sales in their response to Plaintiffs' motion. This motion, however, is not the appropriate forum to address these issues. The parties are, nevertheless, reminded of their discovery obligations under the Federal Rules of Civil Procedure.

> 10. All documents showing all gross and net sales and profits of Sapido Taiwan and Sapido VA since March 17, 2010 resulting from sales of Products sold in the United States.
>
> 11. All documents showing all the customers of Sapido Taiwan and Sapido VA in the United States since March 17, 2010. "Customers" is to mean any person or entity that purchased Products from Sapido Taiwan or Sapido VA.
>
> . . .
>
> 14. All documents exchanged, including all written communications, from March 17, 2010 to the present between either defendant, their employees, agents and/or representatives (other than plaintiffs) and any customer, retailer, resellers, distributor and/or any other entity or person involved in the purchase or sale of Products, regarding the sale, re-sale, purchase, supply and/or distribution of the Products in the United States.

(Eichhorn Rep. Cert., ECF No. 65-1, Ex. A., at 3-5).   Additionally, Plaintiffs' first set of Interrogatories served on Defendant Sapido Taiwan requests the following:

> 16. Set forth in detail all information related to any and all sales from March 1, 2010 to present of any and all Products to anyone or any entity located in the United States, other than sales of the Product made by the plaintiffs. The information requested shall include, but are not limited to: the name and address of the purchaser (purchaser includes anyone who purchased the product at any point in the retail chain, including retailers, distributors, suppliers, customers, resellers, etc…) the date of the sale, the name and quantity of the product sold and the amount of revenue received by defendants as a result of the sale.
>
> 17. Set forth the total dollar amount of sales of Sapido Taiwan and Sapido VA from March 17, 2010 to present from the sale of all Products in the United States, other than sales made by plaintiffs.

(Eichhorn Rep. Cert., ECF No. 65-1, Ex. B, at 5).   Defendants' answers to these requests, which apparently do not reference the CD's and DVD's, preclude Defendants from claiming that

Plaintiffs failed to exercise the due diligence required to satisfy the good cause standard of Federal Rule of Civil Procedure 16.

Despite Defendants' failure to disclose the CD and DVD sales, Plaintiffs discovered information regarding these sales on August 6, 2015. While conducting research in response to Defendants' discovery demands, Plaintiffs found a website containing information indicating that Sapido shipped CD's and DVD's to the United States in 2010 and 2011. (Pls. Br., ECF No. 61-1, at 1-2; Eichhorn Cert., ECF No. 61-4, ¶¶ 4, 5). In other words, despite Defendants' lack of disclosure, Plaintiffs exercised further diligence and discovered the information now at issue. Plaintiffs have satisfied the good cause standard to amend the scheduling order regarding CD's and DVD's under Rule 16, and the claim will be analyzed under Rule 15(a).

Defendants contend that the additional CD's and DVD's claims would cause "immense prejudice" because "nearly three and a half years have passed since the complaint was originally filed" and "the parties have engaged in extensive discovery." (Defs. Opp. Br., ECF No. 64, at 2). Defendants further argue that they would suffer prejudice because the claim, which it approximates to be worth nine million dollars, and would "require defendants to expend significant additional resources" and "would significantly delay the resolution of the dispute." (Id. at 4) (citing Forman v. Davis, 371 U.S. 178, 182 (1962)).

"It is well-settled that prejudice to the non-moving party is the touchstone for the denial of an amendment." Cornell & Co. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 823-24 (3d Cir. 1978) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-31 (1971)). The issue of prejudice requires the Court to "focus on the hardship to the defendants if the amendment were permitted." Cureton, 252 F.3d at 273 (internal citation omitted). Specifically, this Court must consider "whether allowing an amendment would result in additional

discovery, cost, and preparation to defend against new facts or new theories." Id. None of these factors weigh in favor of denying Plaintiffs' motion to amend on the basis of prejudice. Prior to Plaintiffs' filing of the motion to amend, this Court extended the fact discovery end date to December 15, 2015. (ECF No. 59). The parties, therefore, expected to engage in discovery even after the motion to amend was filed. Additionally, the new claim for the sale of CD's and DVD's is not a "new theory". Plaintiffs' original Complaint is premised on the allegations that "Sapido has and continues to sell and distribute Sapido products directly in the United States, even though Speed is the exclusive distributor." (Compl., ECF No. 1, ¶ 43). Furthermore, while the Court is cognizant that the addition of a nine-million dollar claim may require Defendants to incur additional litigation expenses, "frustrated expectations [do not] constitute undue prejudice sufficient to overcome the Rule 15(a) right to amend a pleading." See Long v. Wilson, 393 F. 3d 390, 400 (3d Cir. 2004) (internal citations and quotations omitted).

With regard to delay, Defendants argue that "the time upon which to amend the Complaint as a matter of course has long expired," and that such delay would be unduly burdensome. (Defs. Opp. Br., ECF No. 64, at 2). Plaintiffs assert that any "undue delays in this matter were created by the unnecessary gamesmanship and intentional delays of Sapido Taiwan" and if any subsequent prejudice exists, it "is of defendants' own making." (Pls. Rep. Br., ECF No. 65, at 3). The question of whether there was undue delay requires Courts to focus on the movant's reasons for not amending sooner. Cureton, 252 F.3d at 273. Plaintiffs were unable to amend sooner because the information was not known before August of 2015, one month before Plaintiffs' motion to amend was filed. Moreover, there is "no presumptive period in which a motion for leave to amend is deemed 'timely' or in which delay becomes 'undue.'" Arthur v. Maersk, Inc., 434 F.3d 196, 205

13

(3d Cir. 2006).  Delay alone does not justify denying a motion to amend.  <u>Cureton</u>, 252 F.3d at 273.

Given Federal Rule of Civil Procedure 15's liberal standard, this Court finds that neither unfair prejudice nor undue delay exist here.  The Court must, however, take this new claim into consideration with the original Complaint and this Court's previous rulings.  Plaintiffs' proposed amendment alleges: that as a result of the sale of CD's and DVD's, "Sapido breached the at law and in fact 2010 and 2011 Exclusive Distribution Agreements with Speed as a result of Sapido's sale the Sapido branded CDs and DVDs in the United States"; that "Sapido breached the legal duty it owed to Speed as a result of Sapido's sale the Sapido [sic] branded CDs and DVDs in the United States"; and that "Sapido utilized the work product and intellectual property of Plaintiffs in order to assist with its sales of the Sapido branded CDs and DVDs in the United States."  (Prop. Am. Compl., ECF No. 62, Count Sixteen, ¶¶ 10-12).  Ultimately, Plaintiffs assert that they have "suffered damages as a result of Sapido's contractual breaches, its breaches of legal duties, and its misuse of the work product and intellectual property of Speed as a result of Sapido's sale of the Sapido branded CDs and DVDs in the United States."  (<u>Id.</u> ¶ 13).

These allegations appear to implicate several claims that Plaintiffs alleged in their original Complaint: the Fourth (Defendants unjustly enriched themselves at Plaintiffs' expense by misappropriating Speed's intellectual property), the Sixth (Defendants converted Speed's intellectual property), the Seventh (that Defendants breached their fiduciary duty to Plaintiffs), the Eighth (that Defendants breached the March 2010 Distribution Agreement), the Ninth (that Defendants breached an implied contract following the expiration of the March 2010 Distribution Agreement), and the Tenth and Eleventh Counts (that Defendants breached both the explicit terms and the implied covenant of good faith and fair dealing of the Proposed 2011 Agreement).

14

This Court has already dismissed the Fourth, Seventh, and Eighth Counts for lack of personal jurisdiction. The allegations regarding the sale of CD's and DVD's do not, as they are currently pled, give rise to theories or a basis for reinstatement of causes of actions dismissed for lack of personal jurisdiction (as described in more detail below). The Sixth, Ninth, Tenth, and Eleventh Counts, however, remain viable claims in this matter. Therefore, the allegations regarding CD's and DVD's will not be a separate claim, but rather will be added as facts to bolster these allegations and the damages associated with them. It is "in the interests of justice" to allow Plaintiffs' to amend their Complaint to add facts regarding the alleged sales of CD's and DVD's based on the newly discovered information. See Voilas et al., 173 F.R.D. at 396.

### b. New Claims Against CNET

Defendants oppose Plaintiffs' new claim against third party CNET for similar reasons. Defendants maintain that a significant amount of time has passed since the original Complaint was filed and that Plaintiffs' "desire to add CNET as a party is not based upon genuinely new information." (Defs. Opp. Br., ECF No. 64, at 4-5). Additionally, Defendants contend they will suffer further prejudice if CNET is added because CNET will have the right to serve Defendants with discovery and bring additional claims against them. (Id. at 4). Plaintiffs argue, however, that delay is justified because, upon serving CNET with a subpoena in March of 2015, CNET responded in such a way that "misled plaintiffs into believing CNET USA was not the CNET that used their work product and intellectual property." (Pls. Rep. Br., ECF No. 65, at 6).

Plaintiffs assert that the evidence supporting their new claims against CNET was not discovered until September of 2015. (Eichhorn Cert., ECF No. 61-4, ¶ 19). Plaintiffs allege that, during the exclusive relationship between Speed and Sapido, Sapido improperly transferred Speed's work product and proprietary information to CNET Technology (Taiwan). (Id. ¶ 11).

15

Plaintiffs also assert that CNET Technology then utilized Speed's firmware and work product to sell Sapido routers through CNET USA. (Id. ¶ 20).

In the original Complaint filed on May 21, 2012, Plaintiffs alleged that Sapido breached the exclusive distribution agreement with Speed by distributing products through CNET. (Compl., ECF No. 1, ¶¶ 55-65). Through internet research, Plaintiffs discovered that CNET sold Sapido routers to a Speed customer in February of 2011. (Eichhorn Cert., ECF No. 61-4, ¶ 19). Plaintiffs contend that FCC documents "reveal that the routers being sold by CNET USA in San Jose, are the same as the Sapido routers (accept for brand label) that Plaintiffs were selling on behalf of Sapido as its exclusive distributor." (Id. ¶ 16). Before analyzing the proposed amendment adding claims against CNET under Rule 15, this Court must determine if Plaintiffs have satisfied the good cause standard of Rule 16.

While Plaintiffs assert that they discovered new information regarding CNET in September of 2015, (Eichhorn Cert., ECF No. 61-4, ¶ 19), they were aware of CNET's involvement at the time the original Complaint was filed. There, Plaintiffs asserted that CNET and Sapido shared a CEO and that Sapido used CNET to distribute products in breach of the exclusive distribution contract. (Compl., ECF No. 1, ¶¶ 55-65). Plaintiffs contend that they "thought that the CNET located in San Jose, California, was the same CNET located in Taiwan, and in March 2015 sent a subpoena to the CNET located in San Jose." (Eichhorn Cert., ECF No. 61-4, ¶ 13). Plaintiffs further argue that CNET's attorney gave the impression that CNET USA "had no relationship to Sapido, or the claims of plaintiffs." (Eichhorn Cert., ECF No. 61-4, ¶ 14).

Regardless of what CNET's attorney suggested, Plaintiffs had the opportunity to exercise due diligence and conduct research that would have revealed the same findings prior to the February 13, 2015 deadline. Unlike the claim for CD's and DVD's, Plaintiffs were aware of

16

CNET's connection to the litigation and could have discovered this information much sooner. As such, this Court finds that Plaintiffs have not demonstrated sufficient diligence to satisfy good cause for claims against CNET pursuant to Federal Rule of Civil Procedure 16. This Court shall not, therefore, permit the proposed amendments against CNET, especially in light of the alternative forum available to address such grievances.

### c.  **Claims Previously Dismissed**

Defendants accurately state that Plaintiffs' proposed Amended Complaint does not "properly reflect that the First, Second, Third, Fourth, Fifth, Seventh, Eighth, Twelfth, and Thirteenth Counts of the Complaint were dismissed for lack of personal jurisdiction." (Defs. Opp. Br., ECF No. 64, at 6). Defendants request that if this Court grants Plaintiffs' motion to amend, Plaintiffs Amended Complaint should be altered to "reflect the law the Court's previous rulings." (Id. at 5).

Plaintiffs argue, however, that they should be permitted to add the claims which were previously dismissed for lack of personal jurisdiction because if the newly discovered information had been known at the time of the ruling, "the issue of personal jurisdiction would have likely been decided differently." (Pls. Rep. Br., ECF No. 65, at 7). At the time the motion to dismiss was adjudicated, the record indicated that Defendant Sapido Taiwan's American sales represented only a small percentage of its total business. (See Sun Rep. Decl., ECF No. 41, ¶ 1) (declaring that, in recent years, Sapido Taiwan's U.S. sales accounted for only 3.2% (2010), 5.4% (2011) and 1.9% (2012) of the company's worldwide sales). Plaintiffs now allege that Sapido Taiwan's sales in the United States are "1000% greater than the $357,464 in sales that the Sapido defendants had advised at the time of their motion to dismiss." (Pls. Rep. Br., ECF No. 65, at 7).

17

Plaintiffs, however, do not provide the Court with sufficient analysis regarding the re-instatement of the claims previously dismissed.  Notably, Plaintiffs, and not this Court, bear "'the burden of demonstrating that the defendants' contacts with the forum state are sufficient to give the court in personam jurisdiction.'  These contacts must be shown 'with reasonable particularity.'" Wellness Publ'g v. Barefoot, 128 F. App'x 266, 269 (3d Cir. 2005).  In issuing its Report and Recommendations, this Court went through a lengthy claim by claim analysis with regard to personal jurisdiction because .  (ECF No. 46).  Plaintiffs have not made any such effort here. Plaintiffs simply state that this Court "would have likely []decided differently," yet provide no arguments or analysis to support their contention.  (Pls. Rep. Br., ECF No 65, at 7).  This court will not undertake Plaintiffs' burden of demonstrating personal jurisdiction a second time. Plaintiffs' Amended Complaint will, therefore, properly reflect the previous rulings in this case.

**IV.    CONCLUSION**

Based on the foregoing, Plaintiffs' Motion for Leave to File an Amended Complaint, (ECF No. 61), is **GRANTED** in part and **DENIED** in part.  An appropriate form of Order accompanies this Opinion.

_____
JOSEPH A. DICKSON, U.S.M.J.

cc:    Hon. Jose L. Linares, U.S.D.J.

18