NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SPEED INFORMATION TECHNOLOGY, INC., *et al*,<br><br>Plaintiffs,<br><br>v.<br><br>SAPIDO TECHNOLOGY, INC., *et al*,<br><br>Defendants. | Civil Action No.: 12-3040 (JLL)<br><br>**OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of a Motion for Summary Judgment filed by Defendants Sapido Technology, Inc. ("Sapido Taiwan") and its affiliate entity Sapido Technology, Inc. U.S. ("Sapido USA") (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 56 and Local Federal Rule of Civil Procedure 56.1. (ECF No. 87). Additionally, Plaintiffs Speed Information Technology, Inc., Ekran Ozcan, and Farah Avci (collectively, "Plaintiffs") have filed a Cross-Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Local Federal Rule of Civil Procedure 56.1. (ECF No. 92). Both parties have submitted oppositions, (ECF Nos. 92-1, 99), and Defendants submitted a reply thereto, (ECF No. 99). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court denies Defendants' Motion for Summary Judgment, with the exception of granting Defendants' Motion for Summary Judgment as to Count VI. Furthermore, the Court denies Plaintiffs' Cross-Motion for Summary Judgment.

## I. BACKGROUND

On March 17, 2010, Plaintiffs, a New Jersey corporation and its officers, entered into a "Sole Distribution Agreement" ("2010 Agreement") with Defendant Sapido Taiwan, a Taiwanese corporation. (ECF No. 87-14 ("Defs. SMF") ¶ 1). Pursuant to the 2010 Agreement, Plaintiffs would be the sole United States distributor of Sapido Taiwan's wireless network products for a period of one year. (Defs. SMF ¶ 2; ECF No. 92-6 ("Pls. SMF") ¶ 2). After the one-year term was completed, the 2010 Agreement would be renegotiated and a new agreement would be confirmed by both parties. (Defs. SMF ¶ 2). Along with the 2010 Agreement, the parties entered into an "Authorized Distribution Agreement," which permitted Plaintiffs to use the "website, contents, trademarks, and logos of Sapido [Taiwan] in connection with Sapido [Taiwan's] advertisement, promotion, and distribution of all Sapido [Taiwan's] products." (Defs. SMF ¶ 3). Neither agreement provided that Plaintiffs would retain any intellectual property developed during the course of the 2010 Agreement. (Defs. SMF ¶ 4).

At the conclusion of the 2010 Agreement, Sapido Taiwan forwarded a proposed renewal of the 2010 Agreement and the parties began negotiating the terms of the new agreement. (Pls. SMF ¶¶ 9–10). In April 2011, the parties drafted the renewed agreement ("2011 Agreement"), which was valid for one year. (Pls. SMF ¶ 15). The 2011 Agreement did not require the signature of both parties, but instead would go into effect upon the date of the "first order shipment." (Pls. SMF ¶ 18). In May 2011, Plaintiffs signed the 2011 Agreement and emailed a copy to Sapido Taiwan. (Defs. SMF ¶ 11). Though it is disputed whether the 2011 Agreement went into effect, Defendants do not dispute that the parties engaged in transactions throughout late April and May 2011. (Pls. SMF ¶ 21; ECF No. 99 at ix).

On June 9, 2011, Sapido Taiwan notified Plaintiffs that it was terminating Plaintiffs' sole distributorship of Sapido Taiwan's products. (Defs. SMF ¶ 12; Pls. SMF ¶ 29). Sapido Taiwan further notified Plaintiffs that it was opening its own branch office in the United States, named Sapido USA, to sell its products. (Pls. SMF ¶ 30). Sapido USA in its individual capacity never entered into an agreement with Plaintiffs. (Defs. SMF ¶ 13). Plaintiffs allege that Sapido USA sold at least $210,859.11 worth of products between May 27, 2011 and May 26, 2012. (Pls. SMF ¶ 31). Therefore, if the parties were bound by the 2011 Agreement, Plaintiffs allege that they are owed $83,914.86 at a minimum. (Pls. SMF ¶¶ 33). Plaintiffs calculated this amount based on the percent of the profit that Plaintiffs normally received under the 2010 Agreement. (Pls. SMF ¶ 32).

Plaintiffs accordingly filed a Complaint in this Court against Defendants. (ECF No. 1). Plaintiffs subsequently amended their Complaint, which still alleges Theft of Services and Intellectual Property (identified as Count VI), Breach of Implied in Fact Contract (identified as Count IX), Breach of the 2011 Agreement (identified as Count X), Breach of the Implied Covenant of Good Faith and Fair Dealing (identified as Count XI), Declaratory Relief (identified as Count XIV), and Specific Performance (identified as Count XV). (ECF No. 70 (First Amended Complaint ("FAC")) at 17–23). Defendants deny liability and now move for summary judgment on all claims. (ECF No. 87). In addition, Plaintiffs cross move for summary judgment on all of their remaining claims. (ECF No. 92).

## II. <u>LEGAL STANDARD</u>

Summary judgment is appropriate when there exists no "genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "[T]he moving party must show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial." *McCabe v.*

*Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). If a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

### III. DISCUSSION

#### A. Intellectual Property Claims

In order to assert a claim for the theft of intellectual property under New Jersey law, a plaintiff must allege that (1) he or she provided a novel idea; (2) it was made in confidence to the defendant; and (3) it was adopted and made use of by the defendant. *See Johnson v. Benjamin Moore & Co.*, 347 N.J. Super. 71, 84 (N.J. App. Div. 2002) (citing *Flemming v. Ronson Corp.*, 107 N.J. Super. 311, 317 (N.J. Super. Ct. Law Div. 1969)). Additionally, marketing concepts do not qualify as trade secrets for intellectual property purposes because "once [the concepts] are implemented it is exposed for the world to see and for competitors to legally imitate." *Id.* at 97 (citing *Richter v. Westab, Inc.*, 529 F.2d 896, 900 (6th Cir. 1976)).

As Defendants point out, Plaintiffs broadly assert a claim for the theft of intellectual property without specifying what trade secrets or ideas were allegedly stolen. (FAC at Count VI; ECF No. 99 at 11–12). Instead of addressing this apparent deficiency in their opposition, Plaintiffs

assert arguments under unjust enrichment and the doctrine of *quantum meruit*. (ECF No. 92-1 at 17–18). The Court notes that these arguments do not address what intellectual property Defendants allegedly stole and that neither unjust enrichment nor the doctrine of *quantum meruit* have been asserted in Plaintiffs' Amended Complaint. (*See generally* FAC). Moreover, even if the Court was to construe Plaintiffs' claim as pertaining to the marketing and distribution that Plaintiffs performed for Defendants, such a claim would still fail because marketing concepts do not qualify as trade secrets under New Jersey law. *Johnson*, 347 N.J. Super. at 97. Therefore, the Court concludes that Plaintiffs have failed to raise a genuine dispute of material fact regarding their claim for theft of intellectual property.

Plaintiffs' claim of conversion fails for similar reasons. A claim for conversion requires the "exercise of any act of dominion in denial of another's title to the chattels, or inconsistent with such title." *Muller v. Tech. Devices Corp.*, 8 N.J. 201, 207 (1951) (citing *Farrow v. Ocean Cty. Tr. Co.*, 121 N.J.L. 344, 348 (1938)). Plaintiffs allege that Defendants deprived them of control over listings on the Amazon website that Plaintiffs created during the course of the 2010 Agreement. (ECF No. 92-1 at 20). However, even if the Court assumes that the Amazon listings were intellectual property, it is undisputed that Plaintiffs did not retain any rights to the intellectual property created under the 2010 Agreement or the Authorized Distribution Agreement. (Defs. SMF ¶ 4). Furthermore, Defendants point to Plaintiff Avci's deposition, wherein she testified that once a listing was created, Plaintiffs did not maintain the control to take it down. (ECF No. 87-4 at 189:14–19 ("[o]nce a listing is created, it's created")). Plaintiff Avci also testified that Defendants are not "stealing" Plaintiffs' intellectual property, so much as they are "still taking advantage of it." (ECF No. 87-4 at 185:12–186:3). In response, Plaintiffs have not asserted any facts which would show that they had title to the Amazon listings. (*See* ECF No. 92-2 at ¶¶ 17–

20 (describing the process by which Plaintiffs created the Amazon listings for Defendants but not asserting that Plaintiffs had title to their creation); ECF No. 93 at ¶ 55 (explaining that Defendants took control of the Amazon listings but not asserting that Plaintiffs had title to them)). Therefore, Plaintiffs have failed to raise a genuine dispute of material fact concerning the conversion claim, in order to survive summary judgment, and the Court grants Defendants' Motion for Summary Judgment as to Count VI.

### B. Contract Claims

As a preliminary matter, there is a genuine issue of material fact as to whether Sapido USA is the same entity as Sapido Taiwan and would therefore have a contractual relationship with Plaintiffs. If Sapido USA held itself out to be the same company as Sapido Taiwan, then it was in privity with Plaintiffs and would be liable for any breach. *See Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 171 (3d Cir. 2002) (stating that, for the Court to pierce the corporate veil under New Jersey law, a plaintiff must show that: "(1) one corporation is organized and operated as to make it a mere instrumentality of another corporation, and (2) the dominant corporation is using the subservient corporation to perpetrate fraud, to accomplish injustice, or to circumvent the law."). To support their claim that Sapido Taiwan holds itself out as the same entity as Sapido USA, Plaintiffs point to Defendants' email communications stating that Sapido Taiwan is "setting up Sapido US branch run by our people and under this system, our US branch will directly work with regional distributors and supply goods to them." (ECF No. 93 at Ex. F). Defendants reject this argument, claiming that Sapido USA is merely a separate yet wholly owned subsidiary, which undisputedly never entered into a contract with Plaintiffs. (ECF No. 87-14 at 14, 18; Defs. SMF ¶ 13). Considering both parties raise plausible yet contradicting arguments which are supported by material facts, the Court finds that the question of Sapido USA's

contractual relationship to Plaintiffs must be left for the trier of fact to decide. *See Anderson*, 477 U.S. at 252. Therefore, the Court will continue its analysis of Plaintiffs' contract claims against both Defendants.

Counts IX, X, and XI all raise similar facts and arguments pertaining to the alleged breach of the 2011 Agreement and therefore will be addressed simultaneously. The 2011 Agreement was the renewed contract for Plaintiffs' sole distribution of Defendants' products in the United States. (Pls. SMF ¶ 15). One major change from the 2010 Agreement was that the 2011 Agreement was to take effect upon "first order shipment." (Pls. SMF ¶ 18). Under New Jersey law, for a plaintiff to successfully establish a breach of contract claim, the following elements must be shown: (1) a contract existed; (2) the defendant breached the contract; (3) damages arose from the alleged breach; and (4) the plaintiff performed its own contractual duties. *Frederico v. Home Depot*, 507 F. 3d 188, 203 (3d Cir. 2007); *Video Pipeline, Inc. v. Buena Vista Entm't, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002) (citing *Pub. Serv. Entm't Grp., Inc. v. Phila. Elec. Co.*, 722 F. Supp. 184, 219 (D.N.J. 1989)). A valid contract exists when there is "mutual assent, consideration, legality of the object of the contract, capacity of the parties, and formulation of memorialization." *Vukovich v. Haifa, Inc.*, No. 03-737, 2007 U.S. Dist. LEXIS 13344, at *14–15 (D.N.J. Feb. 28, 2007) (citing *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 421 F. Supp. 2d 831, 833 (D.N.J. 2006)).

The Court finds that neither side has demonstrated an entitlement to summary judgment because there is a dispute of material fact as to whether the parties mutually assented to the 2011 Agreement and were thus bound by its terms. As stated above, the 2011 Agreement took effect upon the "first order shipment." (Pls. SMF ¶ 18). Plaintiffs claim that the "first order shipment" occurred no later than May 27, 2011 and therefore the 2011 Agreement became valid at that time.

(ECF No. 92-1 at 11). Plaintiffs point to the undisputed fact that they conducted business with Defendants throughout late April 2011 and May 2011 to show that the parties had begun acting under the 2011 Agreement. (Pls. SMF ¶ 21; ECF No. 93 at ¶ 38). Defendants, on the other hand, contend that they did not assent to the 2011 Agreement because Plaintiffs were still trying to negotiate terms after the May 27, 2011 transaction occurred, which shows that the 2011 Agreement was not a final and enforceable document. (ECF No. 99 at 2). Defendants also point to Plaintiff Avci's deposition, wherein she testified that the 2011 Agreement did not include all of the terms of the contract. (ECF No. 87-4 ("Well, this is a two-page contract. Right? Not everything is here.")). In light of the contradicting facts and evidence asserted by the parties, the Court concludes that there is a genuine issue of material fact as to whether the 2011 Agreement was an enforceable contract. *See Anderson*, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

This Court, in permitting the breach of contract claims to proceed, will permit the implied covenant claim to proceed as well, because the implied covenant of good faith and fair dealing is inherent to a contract. *See Conn. Gen. Life Ins. Co. v. Roseland Ambulatory Surgery Ctr.*, No. 12-5941, 2014 U.S. Dist. LEXIS 79189, at *11–12 (D.N.J. June 11, 2014); *see also Paul Germann & Assocs. v. Specialty Food Mgmt. Grp.*, LLC, No. 11-1399, 2013 U.S. Dist. LEXIS 43810, at *24 (D.N.J. Mar. 27, 2013) (denying motion for summary judgment concerning breach of contract and implied covenant claims, and noting that a party could be both in breach of contract and acting in bad faith toward another party); *Asta Funding, Inc. v. Your Wellbeing, LLC*, No. 11-2202, 2014 U.S. Dist. LEXIS 107138, at *21 (D.N.J. Aug. 5, 2014) (denying summary judgment on implied covenant claim based upon denial of summary judgment on breach of contract claim, because the

implied covenant claim "may depend on the existence and scope of the contract"). Therefore, the Court denies both Motions for Summary Judgment as to Counts IX, X, and XI.

### IV. CONCLUSION

For the aforementioned reasons, the Court hereby denies Defendants' Motion for Summary Judgment, with the exception of granting Defendants' Motion for Summary Judgment as to Count VI. Furthermore, the Court hereby denies Plaintiffs' Cross-Motion for Summary Judgment. An appropriate Order follows this Opinion.

Date: December 19th, 2017

JOSE L. LINARES
Chief Judge, United States District Court